**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

DENISE DUNNE, TAMARA LASHCHYK, and RICHARD C. MANJARRES, individually and on behalf of all others similarly situated,

Plaintiff,

v.

METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,

Defendants.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs, Denise Dunne, Tamara Lashchyk, and Richard C. Manjarres, individually and on behalf of all others similarly situated, through their counsel, file this class action complaint against Defendants Metropolitan Transportation Authority (MTA) and Triborough Bridge and Tunnel Authority (TBTA) and allege as follows:

## NATURE OF THE CASE

1. Defendants have taken hundreds of millions of dollars of illegal tolls from drivers under the improper "congestion pricing" tolling program that they began operating earlier this year in violation of federal law. This class action seeks the return of those illegal tolls and discontinuance of the illegal tolling program. Defendants' tolling program violates federal law in at least three separate respects.

2. *First*, federal statute broadly prohibits "tolls of all kinds" on federally funded highways, except under certain limited, specifically codified exceptions. 23 U.S.C. § 301. The sole exception on which Defendants have relied to justify their tolling program is the Value Pricing Pilot Program (VPPP), codified in a note to 23 U.S.C. § 149. That VPPP exception,

however, permits tolls on "the Interstate System" only. Defendants' tolling program, in Manhattan's "Central Business District" or "CBD," reaches *outside* the "Interstate System" covered by the VPPP and therefore does not qualify for the VPPP exception to Section 301's prohibition on "tolls of all kinds" on federally funded highways.

3. *Second*, the VPPP could not serve as a valid exception to Section 301's prohibition against the tolling for the additional reason that it has not been operative for years—indeed, it has not received congressional funding for more than a decade, Congress expressly mandated that VPPP programs must be federally funded, which Defendants' "congestion pricing" tolling program was not.

4. *Third*, even if the VPPP were still in effect (it is not) and applied to the tolling program's Central Business District (it does not), Defendants would require permission from the federal government to impose tolls under any purported VPPP exception to Section 301's general prohibition on "tolls of all kinds" on federally funded highways. Defendants lack the required permission. After obtaining a putative "VPPP Agreement" from the outgoing, lame-duck Biden administration during its final days in November 2024 (at a time when the incoming president-elect had already made clear that he would terminate the planned tolling program promptly upon taking office), Defendants were notified in February 2025 that the new administration was indeed terminating the (invalid) "VPPP Agreement," further cementing Defendants' lack of authority to impose the illegal tolls it has wrongfully charged Plaintiffs under the "congestion pricing" tolling program.

5. Any one of these three grounds, standing alone, would be independently sufficient to require Defendants to return their illegally collected tolls to the drivers who paid them and to discontinue their illegal tolling program. Accordingly, Plaintiffs seek recovery and relief on

behalf of the class of all drivers who have been, or will be, improperly charged "congestion pricing" tolls since Defendants launched their illegal tolling program on January 5, 2025.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action presents federal questions under the laws of the United States, including 23 U.S.C. § 301.

7. The Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. §§ 1332(d), 1453, 1711-15, because there are more than 100 class members, minimal diversity exists between the parties, and class members' aggregate damages exceed $5 million exclusive of interest and costs.

8. This Court has personal jurisdiction over Defendants based on their contacts with New Jersey, including their imposition of tolls on New Jersey residents, their engagement of New Jersey entities to support the tolling program, and their purposeful availment of this forum.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, including Defendants' regular transmittal of toll bills by mail to New Jersey residents, as well as Defendants' entry into a $488 million contract with a New Jersey–based firm to support the tolling program at issue.

**PARTIES**

10. Plaintiff Denise Dunne is a resident of Lakewood, New Jersey, who has driven into the Central Business District since January 5, 2025, and paid tolls under Defendants' illegal tolling program.

11. Plaintiff Tamara Lashchyk is a resident of Jersey City, New Jersey, who has driven into the Central Business District on numerous occasions since January 5, 2025, and paid tolls under Defendants' illegal tolling program.

12. Plaintiff Richard C. Manjarres is a resident of Arlington, Virginia, who has driven into the Central Business District since January 5, 2025, and paid tolls under Defendants' illegal tolling program.

13. Defendant Metropolitan Transportation Authority (MTA) is a public benefit corporation chartered under the Metropolitan Transportation Authority Act. *See* N.Y. Pub. Auth. Law §§ 1260–1279-l. MTA is a program sponsor of the illegal "congestion pricing" tolling program at issue.

14. Defendant Triborough Bridge and Tunnel Authority (TBTA) is a public benefit corporation chartered under the Triborough Bridge and Tunnel Authority Act. *See* N.Y. Pub. Auth. Law §§ 550–571. TBTA is an independent affiliate of MTA and was specifically charged with the design, development, and operation of the illegal "congestion pricing" tolling program at issue.

## FACTUAL BACKGROUND

### A. Federal Statutory Prohibition Against "Tolls of All Kinds" on Federally Funded Highways, with Only Limited Express Exceptions that Do Not Apply Here

15. Under the long-established consolidated federal highway legislation that was enacted and has been in place since the Eisenhower administration, federal statutory law is clear that all federally funded highways "shall be free from tolls of all kinds," unless a specific statutory exception applies. 23 U.S.C. § 301.

16. Most of the statutory exceptions to Section 301's default prohibition against "tolls of all kinds" are contained in 23 U.S.C. § 129. None of those exceptions apply to Defendants' "congestion pricing" tolling program.

17. In 1991, Congress enacted one additional exception to Section 301's broad default prohibition against tolling. That additional exception, known as the "Value Pricing Pilot Program," or "VPPP," was codified as a note to 23 U.S.C. § 149.

18. The VPPP was expressly limited to permitting potential tolls on the federal "*Interstate System*" under certain conditions. Specifically, Subsection 4 of the VPPP note stated: "Notwithstanding sections 129 and 301 of title 23, United States Code, the Secretary shall allow the use of tolls *on the Interstate System* as part of any value pricing pilot program under this subsection" (emphasis added).

19. The statutorily defined term "Interstate System" means "the Dwight D. Eisenhower National System of Interstate and Defense Highways described in section 103(c)." 23 U.S.C. § 101(a)(12). Section 103(c), in turn, provides that the Interstate System consists of certain highways "designed, located, and selected in accordance with this paragraph," and prescribes how the U.S. Secretary of Transportation may formally designate highways as part of the Interstate System. *Id.* § 103(c).

20. The "Interstate System" represents only a portion of the broader "National Highway System," which is statutorily defined as "the Federal-aid highway system described in section 103(b)." 23 U.S.C. § 101(a)(16). Section 103(b), in turn, describes the parameters for roadways that constitute the National Highway System, "which may include highways on or off the Interstate System." *Id.* § 103(b); *see also id.* § 103(a) (National Highway System "includes" the Interstate System).

21. Accordingly, the VPPP created only a limited exception to Section 301's prohibition against tolling. That limited exception was confined solely to the statutorily defined "Interstate System," and *not* to the entire National Highway System.

22. The Central Business District (CBD) where Defendants have imposed their illegal "congestion pricing" tolling program contains federally funded roadways that are part of the National Highway System but are *not* part of the Interstate System.

FIGURE 1
TOLLING PROGRAM AREA




https://congestionreliefzone.mta.info/tolling
(accessed Aug. 1, 2025)

FIGURE 2
FHWA NATIONAL HIGHWAY SYSTEM MAP




https://hepgis-usdot.hub.arcgis.com/pages/national-highway-system
(last accessed Aug. 1, 2025)

23. As such, Defendants' tolling program exceeds the scope of the VPPP's limited exception to Section 301's prohibition against tolling.

24. Moreover, the VPPP has not been operative for years in any event. Indeed, Congress has not voted to appropriate funds to the VPPP since 2012, and all projects under the VPPP were completed as of the submission of the VPPP's 2020 Report to Congress.

25. The VPPP's lack of any congressional appropriations for more than a decade is especially significant because the VPPP expressly *mandated* federal funding of the pilot programs it authorized. Specifically, Subsection 2 of the VPPP specifically *required* that "the Federal share payable for such programs *shall* be 80 percent," and further *required* that the U.S. Secretary of Transportation

> *shall* fund all preimplementation costs and project design, and all of the development and other start up costs of such projects, for a period of at least 1 year, and thereafter until such time that sufficient revenues are being generated by the program to fund its operating costs without Federal participation, except that the Secretary may not fund the preimplementation or implementation costs of any project for more than 3 years.

23 U.S.C. § 149, note (emphasis added.)

26. Consistent with the fact that Congress has not appropriated any funds to the VPPP for well over a decade, the federal government did not fund (and could not have funded) Defendants' "congestion pricing" tolling program as was expressly required for any pilot program under the VPPP.

27. As such, Defendants' illegal tolling program falls outside the scope of the VPPP's limited exception to Section 301's general prohibition on tolling based on this independent ground as well.

**B. Federal Termination of Defendants' Putative "Congestion Pricing" Tolling Authority**

28. Beyond their lack of authority to impose their illegal tolling program under the VPPP in the first place, any (illusory) authority Defendants purportedly had was squarely rescinded as of March 21, 2025.

29. Prior to implementing the illegal "congestion pricing" tolling program under the auspices of New York's Traffic Mobility Act (N.Y. Veh. & Traf. Law §§ 1701-06), leadership

vacillated on whether to adopt the tolling program at all. In July 2024, New York Governor Kathy Hochul announced an indefinite pause on the potential program, given the added burdens it placed on working- and middle-class families.

30. Meanwhile, as early as May 2024 (prior to Governor Hochul's indefinite pause), then–presidential candidate Donald Trump had openly announced that if elected, one of his early orders of business as President would be to terminate the potential "congestion pricing" program. Mr. Trump won the presidential election on November 5, 2024.

31. Days later, on November 14, 2024, Governor Hochul reversed course and proposed that the "congestion pricing" program move forward after all, in the face of the president-elect's express opposition to the program.

32. One week later, on November 21, 2024, Defendant TBTA entered a so-called "VPPP Agreement" with the outgoing, lame-duck Biden administration's Federal Highway Administration (FHWA), purporting to authorize the (illegal) "congestion pricing" tolling program.

33. Defendants have openly admitted and conceded that they are relying on the VPPP Agreement as their basis to operate the tolling program, and that in the absence of the VPPP Agreement, the tolling program is indisputably unauthorized and illegal.

34. For the reasons discussed in Section A above, the FHWA was in no position to "authorize" Defendants' tolling program under the VPPP at all, and the November 2024 VPPP Agreement therefore does not validly authorize the illegal tolling program.

35. But even if the VPPP Agreement had somehow provided valid authorization for the tolling program (it did not), any such authorization was unequivocally revoked by no later than March 21, 2025.

36. On February 19, 2025, the U.S. Secretary of Transportation, Sean Duffy, formally terminated the VPPP Agreement, writing in a letter to Defendant TBTA and others that he was "rescinding" FHWA's approval of the program and "terminating" the VPPP Agreement.

37. On February 20, 2025, the FHWA's Executive Director, Gloria Shepherd, advised Defendants that the VPPP Agreement's termination would be effective as of March 21, 2025, and directed that Defendants must "cease the collection of tolls on Federal-aid highways in the CBD tolling program area."

38. Accordingly, even if the VPPP had provided Defendants with a valid exception to Section 301's general prohibition against "tolls of all kinds" on federally funded highways (it had not), that exception ended upon the federal government's termination of the VPPP Agreement as of March 21, 2025.

39. On March 20, 2025, Secretary Duffy announced a 30-day extension, until April 20, 2025, for Defendants to cease collection of tolls. That 30-day extension of the deadline for compliance, however, did not modify the effective date of the VPPP Agreement's termination.

40. All tolls that Defendants have collected from drivers since March 21, 2025, in connection with the illegal "congestion pricing" tolling program are therefore unauthorized for this additional, independently sufficient reason as well.

41. Because Defendants' illegal tolling program directly contradicts federal law (in multiple respects), it is unconstitutional under the Supremacy Clause of the U.S. Constitution.

**C. Defendants' Collection of Hundreds of Millions of Dollars in Illegal Tolls**

42. Since implementing this illegal "congestion pricing" tolling program on January 5, 2025, Defendants have imposed hundreds of millions of dollars of illegal tolls on drivers who enter the Central Business District (CBD).

43. Under Defendants' tolling scheme, drivers travelling in the CBD have no choice, and in effect are compelled and coerced into paying the illegal tolls.

44. Defendants have wrongfully imposed $9 in illegal tolls on Plaintiff Denise Dunne under the "congestion pricing" program on or about April 20, 2025, and Defendants' imposition of "congestion pricing" tolls has deterred Ms. Dunne from driving in the CBD, including to visit her ailing mother.

45. Defendants have wrongfully imposed at least $90 in illegal tolls on Plaintiff Tamara Lashchyk under the "congestion pricing" program from January through July 2025.

46. Defendants have wrongfully imposed $30.30 in illegal tolls on Plaintiff Richard C. Manjarres under the "congestion pricing" program in October and November 2025.

47. In the first 10 months of the program alone (though October 2025), Defendants collected approximately $468 million in illegal tolls from drivers under the "congestion pricing" tolling program.

48. As a result of their illegal collection of tolls, Defendants effectively have the Class members' money in their pockets.

**CLASS ACTION ALLEGATIONS**

49. Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all others who have paid or will pay illegal tolls under the "congestion pricing" tolling program from the date of its implementation on January 5, 2025, through the conclusion of this action (the "Class").

50. This action is properly maintainable as a class action, and a class action is superior to other available methods of fair and efficient adjudication of this controversy.

51. The Class is so numerous that individual joinder of all members is impracticable. Indeed, hundreds of thousands of vehicles enter the tolling program's Central Business District (CBD) daily.

52. The Class members are ascertainable. Indeed, Defendant TBTA's Chief Operating Officer has specifically attested that the identities of the toll payers and the amount paid by those toll payers are recorded.

53. Questions of law and fact are common to the Class members and predominate over any questions affecting only individuals. Those issues include but are not limited to:

a. Whether Defendants' "congestion pricing" tolling program is barred by the broad federal statutory mandate that all federally funded highways "shall be free from tolls of all kinds," unless a specific statutory exception applies. 23 U.S.C. § 301.

b. Whether Defendants may invoke the VPPP as an exception to Section 301's broad prohibition against "tolls of all kinds" on federally funded highways, given that (i) the VPPP by its express terms is limited to the "Interstate System," but Defendants' tolling program imposes tolls on roads that are not part of that "Interstate System," and (ii) the VPPP has not been funded in over a decade, and Defendants' "congestion pricing" tolling program did not comply with the VPPP's federal funding requirements.

c. Whether Defendants may continue to charge drivers pursuant to the "congestion pricing" tolling program following the federal government's express termination of Defendants' sole purported basis for doing so, the so-called VPPP Agreement.

54. Plaintiffs' claims and defenses are typical claims and defenses of other Class members, and Plaintiffs have no motives that are against the interests of all Class members. Plaintiffs will fairly and adequately protect the interests of the Class.

55. Plaintiffs are committed to prosecuting this action and have retained competent, experienced counsel.

56. Defendants have acted in a manner that adversely affects Plaintiffs and all Class members alike, making injunctive relief and corresponding declaratory relief appropriate for the Class as a whole.

57. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for the Defendants, as well as the risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## CAUSES OF ACTION

### COUNT I
### Illegal Exaction

58. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth here.

59. Defendants' "congestion pricing" tolling program unlawfully conditions Plaintiffs' ability to drive in the Central Business District (CBD) on payment of illegal tolls. The "congestion pricing" tolls provide for the unauthorized taking from Plaintiffs and the other Class members of money not validly due and owing to Defendants. Such tolls constitute illegal exactions.

60. As a practical matter, Plaintiffs and the other Class members were compelled and coerced to pay the illegal tolls to reach their destinations.

61. Defendants have taken possession of toll monies collected under the auspices of the illegal "congestion pricing" tolling program. They have benefitted and continue to benefit from possession of those illegally collected toll monies.

62. Principles of equity and good conscience do not permit Defendants to retain the illegal tolls collected under the auspices of the tolling program.

63. Accordingly, Plaintiffs and the other Class members are entitled to judgment against Defendants imposing a constructive trust, requiring return of all toll monies illegally collected under the auspices of the "congestion pricing" tolling program, and discontinuing Defendants' illegal tolling program.

**COUNT II**
**Money Had and Received**

64. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth here.

65. Defendants have collected and continue to collect illegal tolls from the Class members under the "congestion pricing" tolling program.

66. Plaintiffs and the other Class members were practically compelled to pay the illegal tolls to reach their destinations.

67. Defendants have benefitted and continue to benefit from the possession of toll monies collected under the auspices of the illegal "congestion pricing" tolling program.

68. Principles of equity and good conscience do not permit Defendants to retain the illegal tolls collected under the auspices of the "congestion pricing" tolling program.

69. Plaintiffs and the Class members therefore seek a judgment against Defendants imposing a constructive trust and requiring return of all illegally collected toll monies collected.

**COUNT III**
**Declaratory Judgment**

70. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth here.

71. As set forth above, Defendants' tolling program violates federal law in at least three separate respects.

72. First, the VPPP by its express terms did not permit any exception to the general statutory prohibition against tolling beyond the statutorily defined Interstate System, yet Defendants' "congestion pricing" tolling program encompasses roadways that are *not* part of the Interstate System covered by the VPPP.

73. Second, the VPPP could not empower Defendants to implement the "congestion pricing" tolling program because Congress has not voted to appropriated funds to the VPPP for over a decade, making it impossible to meet the VPPP's express federal funding requirement to which any VPPP program is expressly subject.

74. Third, any purported authority under the VPPP for Defendants' "congestion pricing" tolling program had been revoked and terminated by no later than March 21, 2025.

75. Absent valid permission to impose tolls on federal aid roadways, Defendants' collection of toll monies from Plaintiffs and the other Class members is illegal and unauthorized.

76. An actual, substantial, and justiciable controversy has therefore arisen and exists between the Class and Defendants herein and their respective rights, obligations, and duties with respect to Defendants' improper and illegal collection of tolls pursuant to its "congestion pricing" tolling program.

77. By reason of the foregoing, Plaintiffs and the Class seek a declaratory judgment against Defendants that Defendants are liable and responsible to reimburse the Class for Defendants' illegal collection of tolls, and Defendants are subject to all equitable and injunctive relief, and such other relief as the Court may order as is reasonable and appropriate.

**COUNT IV**
**Injunctive Relief**

78. Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth here.

79. As set forth above, Defendants' tolling program violates federal law in at least three separate respects.

80. First, the VPPP by its express terms did not permit any exception to the general statutory prohibition against tolling beyond the statutorily defined Interstate System, yet Defendants' "congestion pricing" tolling program encompasses roadways that are *not* part of the Interstate System covered by the VPPP.

81. Second, the VPPP could not empower Defendants to implement the "congestion pricing" tolling program because Congress has not voted to appropriated funds to the VPPP for over a decade, making it impossible to meet the VPPP's express federal funding requirement to which any VPPP program is expressly subject.

82. Third, any purported authority under the VPPP for Defendants' "congestion pricing" tolling program had been revoked and terminated by no later than March 21, 2025.

83. Absent valid permission to impose tolls on federal aid roadways, Defendants' collection of toll monies from Plaintiffs and the other Class members is illegal and unauthorized.

84. By reason of the foregoing, Plaintiffs and the Class seek an injunction to discontinue Defendants' illegal "congestion pricing" tolling program.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

i. Certifying the Class and designating of the undersigned counsel as class counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure.

ii. Awarding the Class repayment of the tolls they paid under Defendants' illegal "congestion pricing" tolling program.

iii. Declaring that Defendants' "congestion pricing" is illegal and that Defendants must return all illegally collected tolls and discontinue the program.

iv. Enjoining Defendants from continued illegal collection of tolls under their "congestion pricing" tolling program.

v. Imposing a constructive trust on all monies collected by Defendants under the auspices of the "congestion pricing" tolling program.

vi. Awarding Plaintiffs their costs for the action, including reasonable attorneys' fees.

vii. Granting such other relief as the Court deems just and proper.

## REQUEST FOR JURY TRIAL

Plaintiffs request a trial by jury on all issues and counts.

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Plaintiffs, by their undersigned counsel, certify that, to the best of their knowledge and belief, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration or administration proceeding in this District.

Dated: December 2, 2025

LAVERY, SELVAGGI & COHEN, P.C.

/s/ Michael B. Lavery
Michael B. Lavery (033241989) (ML1484)
James F. Moscagiuri (029222001) (JM8928)
1001 Route 517
Hackettstown, NJ 07840
908 852 2600
mlavery@lsaclaw.com
jmoscagiuri@lsaclaw.com

CYRULNIK FATTARUSO LLP

/s/ Jason Cyrulnik
Jason Cyrulnik (*pro hac vice forthcoming*)
Paul Fattaruso (*pro hac vice forthcoming*)
Steven Magnusson (*pro hac vice forthcoming*)
55 Broadway, Third Floor
New York, NY 10006
646 844 2466
jcyrulnik@cf-llp.com
pfattaruso@cf-llp.com
smagnusson@cf-llp.com

DANIEL HUFF, ESQ.

/s/ Daniel Huff
Daniel Huff (*pro hac vice forthcoming*)
65 Arboro Drive
Sharon, MA 02067
617 299 0594
danhuff1776@gmail.com

*Counsel for Plaintiffs*