**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DENISE DUNNE, TAMARA LASHCHYK, and RICHARD C. MANJARRES, individually and on behalf of all others similarly situated,<br>*Plaintiffs,*<br>v.<br>METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY,<br>*Defendants.* | Hon. Leo M. Gordon<br>No. 25 Civ. 18105 (LMG)(LDW)<br>**Oral Argument Requested** |

# MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE METROPOLITAN TRANSPORTATION AUTHORITY AND TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY'S MOTION TO TRANSFER

# TABLE OF CONTENTS


TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT ........................................................................1

ARGUMENT ........................................................................................3

I. Transfer Is Warranted Under the First-Filed Rule ........................................3

II. Transfer Is Appropriate Pursuant to 28 U.S.C. § 1404 ..................................8

A. Private Interest Factors ..............................................................8

B. Public Interest Factors ..............................................................12

III. Transfer Is Also Required by Section 1406 .............................................14

CONCLUSION ......................................................................................16

# TABLE OF AUTHORITIES

## CASES

*In re 3M*,
2020 WL 13924735 (3d Cir. Nov. 18, 2020)....8

*Abushalieh v. Am. Eagle Exp.*,
716 F. Supp. 2d 361 (D.N.J. 2010)....6, 7

*Advanta Corp. v. Visa U.S.A., Inc.*,
1997 WL 88906 (E.D. Pa. Feb. 19, 1997)....7

*Blumencranz v. Metro. Transp. Auth.*,
25 Civ. 1787 (S.D.N.Y.)....1, 5

*Bockman v. First Am. Mktg. Corp.*,
459 F. App'x 157 (3d Cir. 2012).... 14, 15

*Booth v. Citizens Bank*,
2023 WL 3916275 (D.N.J. June 9, 2023)....13

*Bos. Sci. v. Johnson & Johnson*,
532 F. Supp. 2d 648 (D. Del. 2008)....13

*Brachovel v. South Bay Energy*,
23 Civ. 184 (S.D.N.Y.)....12

*Cancer Genetics, Inc. v. Kreatech Biotech.*,
2007 WL 4365328 (D.N.J. Dec. 11, 2007)....12

*Caroll v. Trump*,
20 Civ. 7311 (S.D.N.Y.)....12

*Catanese v. Unilever*,
774 F. Supp. 2d 688 (D.N.J. 2011)....6

*Chan v. U.S. Dep't of Transp.*,
782 F. Supp. 3d 39 (S.D.N.Y. 2025)....10

*Chavez v. Dole Food*,
836 F.3d 205 (3d Cir. 2016)....................................................................................4

*In re CityMD Data Priv. Litig.*,
2025 WL 2505655 (D.N.J. Sept. 2, 2025)..........................................9, 11, 13

*Danka Funding v. Page, Scrantom*,
21 F. Supp. 2d 465 (D.N.J. 1998)......................................................................9

*E.E.O.C. v. Univ. of Penn.*,
850 F.2d 969 (3d Cir. 1988)..............................................................................5

*Filler v. Lernout*,
2002 WL 227079 (D. Del. Feb. 8, 2002)...........................................................5

*Ivy–Dry, Inc. v. Zanfel Lab'y, Inc.*,
2009 WL 1851028 (D.N.J. June 24, 2009).........................................................7

*Just Enterprises, Inc. v. O'Malley & Langan, P.C.*,
560 F. Supp. 2d 345 (M.D. Pa. May 30, 2008) ...................................................7

*Kalawa v. United States*,
2020 WL 3603205 (D.N.J. July 2, 2020) ..........................................................13

*Kane v. Ollie's Bargain Outlet Holdings, Inc.*,
2018 WL 6168085 (D.N.J. Nov. 26, 2018) ......................................................10

*Karimi v. Deutsche Bank Aktiengesellschaft*,
2022 WL 1001566 (D.N.J. Mar. 31, 2022)....................................................8, 11

*Kedia v. Jamal*,
2007 WL 1239202 (D.N.J. Apr. 25, 2007) ..........................................................7

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
189 F.2d 31 (3d Cir. 1951)..................................................................................7

*Kravitz v. Niezgoda*,
2012 WL 4321985 (E.D. Pa. Sept. 21, 2012)......................................................15

*MacLean v. Wipro*,
2020 WL 7090746 (D.N.J. Dec. 4, 2020)....6

*Maximum Hum. Performance v. Dymatize Enters., Inc.*,
2009 WL 2778104 (D.N.J. Aug. 27, 2009) ....4, 7

*MaxLite, Inc. v. ATG Elecs., Inc.*,
193 F. Supp. 3d 371 (D.N.J. 2016)....8

*Mazzei v. Heartland Payment Systems, LLC*,
2023 WL 6121318 (D.N.J. Sept. 19, 2023)....6

*Metro. Transp. Auth v. Duffy*,
25 Civ. 1413 (S.D.N.Y.).... 1, 5, 6

*Muhammad v. State Farm Indem. Co.*,
719 F. Supp. 3d 397 (D.N.J. 2024)....1

*Mulgrew v. U.S. Dep't of Transp.*,
717 F. Supp. 3d 281 (E.D.N.Y. 2024)....10

*New Jersey v. Dep't of Transp.*,
No. 23 Civ. 3885 (D.N.J.)....3

*Palagano v. NVIDIA Corp*,
2015 WL 5025469 (E.D. Pa. Aug. 25, 2015) ....9

*Patton Boggs LLP v. Chevron Corp.*,
2012 WL 6568526 (D.N.J. Dec. 14, 2012).... 13, 14

*Power Grp. v. SAP Am.*,
2020 WL 4805352 (E.D. Pa. Aug. 18, 2020) ....4

*Rojas v. Trans States Airlines*,
204 F.R.D. 265 (D.N.J. 2001)....15

*Sokolich v. Dep't of Transp.*,
No. 23 Civ. 21728 (D.N.J.)....3

*State Farm Mut. v. Tz'doko V'CHESED of Klausenberg*,
543 F. Supp. 2d 424 (E.D. Pa. 2008) ........................................................15

*Superior Precast v. Safeco Ins. Co.*,
71 F. Supp. 2d 438 (E.D. Pa. 1999) ........................................................15

*Town of Hempstead v. Hochul*,
Index No. 450653/2025 (N.Y. Sup. Ct., Nassau Cnty. Feb. 10, 2025) ................11

*Triangle Conduit & Cable v. Nat'l Elec. Prods.*,
125 F.2d 1008 (3d Cir. 1942) ........................................................7

*Wm. H. McGee & Co., Inc. v. United Arab Shipping Co.*,
6 F. Supp. 2d 283 (D.N.J. 1997) ........................................................8

*Worthington v. Bayer Healthcare, LLC*,
2012 WL 1079716 (D.N.J. Mar. 30, 2012) ........................................ 4, 6, 7

*Yocham v. Novartis Pharms.*,
565 F. Supp. 2d 554 (D.N.J. 2008) ........................................ 12, 13

**STATUTES**

23 U.S.C. § 301 ........................................................4

28 U.S.C. § 1391(b)(2) ........................................................14

28 U.S.C. § 1404(a) ........................................................8

**OTHER AUTHORITIES**

Cyrulnik Fattaruso LLP,
https://cf-llp.com/ ........................................................12

E-ZPass New York, *Temporary Travel Account – Terms & Conditions*,
https://www.e-zpassny.com/tbm/tta-terms-and-conditions ................................11

Kimberly J. Norwood, *Shopping for a Venue*,
50 U. Miami L. Rev. 267, 289 (1996) ........................................................5

## PRELIMINARY STATEMENT[1]

Plaintiffs' opposition brief (ECF 39) confirms that they have engaged in forum shopping in order to circumvent an adverse decision by Judge Liman in the SDNY, *Metro. Transp. Auth. v. Duffy*, 784 F. Supp. 3d 624 (S.D.N.Y.) ("*Duffy*"). Opp. at 11, n.6. But the whole reason for the venue rules discussed below is to prevent such conduct since it "would open the door to different courts reaching different decisions" and "burden the Defendant, by requiring it to litigate the same questions twice, before two different courts." *Muhammad v. State Farm Co.*, 719 F. Supp. 3d 397, 406 (D.N.J. 2024). Plaintiffs in this case are challenging the federal government's authority to authorize the Program under the VPPP statute, and there are two pending cases in the SDNY in which the MTA Defendants are litigating that very issue. Plaintiffs have not cited any case for the proposition that making additional arguments to support the same underlying claim is enough to prevent transfer. If the first-filed rule and related transfer and venue statutes were as toothless as Plaintiffs contend, they would hardly ever apply at all.

***The first-filed rule:*** Plaintiffs do not dispute that there are two previously filed cases in the SDNY (*Duffy*, No. 25 Civ. 1413, and *Blumencranz v. Metro. Transp. Auth.*, No. 25 Civ. 1787 (the "SDNY actions")) where Judge Liman has already held

[1] Unless otherwise defined herein, all defined terms have the same meaning as in the MTA Defendants' opening brief. ECF 33 ("Mot.").

that the Program is authorized by the VPPP statute and that Secretary Duffy's purported termination was therefore improper. *See* Opp. at 9-10. While Plaintiffs now try to downplay their reliance on this theory in their opposition brief, it is black-letter law that a plaintiff "cannot amend a complaint through the filing of a brief." *Ibrahim v. DeFilippo*, 2021 WL 753898, at *8 (D.N.J. Feb. 26, 2001). And the Complaint's third theory for why the Program violates federal law is the same as the argument in *Duffy*. *See* Compl. ¶ 1 ("program violates federal law in at least *three separate respects*" (emphasis added)); *id.* ¶ 4 ("*Third*, … Defendants lack the required [federal] permission."). The fact that Plaintiffs have come up with some new *arguments* based on the VPPP statute does not matter to the first-filed rule analysis. Indeed, Secretary Duffy's "rescission" was also based on statutory arguments that the Program was illegal "*from the very beginning*." Opp. at 7. As a result, Judge Liman was required to engage in an extensive analysis of the VPPP statute, as well as related statutes, regulations, and legislative history. The fact that the parties are not 100% identical is likewise irrelevant in this class action.

***Section 1404(a):*** Plaintiffs concede that the Program was implemented pursuant to a New York statute, based on decisions made in New York, and that tolls are charged only if a driver enters New York City through the CBD. Compl. ¶¶ 42-48. Although Plaintiffs make much of the fact that the Program "runs [along] the New Jersey-New York border," Opp. at 18, that does not change the fact that no one

pays congestion pricing tolls for driving in New Jersey. Plaintiffs are also mistaken about the EA projections, *id.* at 21, which actually show that the vast majority of tolls (or 70%) will be paid by New Yorkers, who clearly comprise the vast majority of the putative plaintiff class. And Plaintiffs' reliance on a single Program contractor's satellite office in New Jersey, when this contractor has nothing whatsoever to do with Plaintiffs' claim that the Program is not permitted under federal law, does not come close to changing the transfer analysis.

***Section 1406:*** Venue in this District is improper anyway since no events giving rise to Plaintiffs' claims occurred in New Jersey. While it is true that the MTA Defendants are litigating two New Jersey NEPA cases before Your Honor, *New Jersey v. Dep't of Transp.*, No. 23 Civ. 3885; *Sokolich v. Dep't of Transp.*, No. 23 Civ. 21728 (the "New Jersey NEPA cases"), those cases relate to environmental statutes like NEPA and the adequacy of the environmental mitigation measures taken in New Jersey, not the VPPP or the statutory authorization to toll.

## ARGUMENT

### I. TRANSFER IS WARRANTED UNDER THE FIRST-FILED RULE

Plaintiffs do not dispute that the SDNY actions predate this case, or that the subject matter is the same in the sense that they all present the same question of whether the Program was authorized by the VPPP statute. Mot. at 13-14; *see* Opp. at 9-10. It is telling that the words "subject matter" do not appear anywhere in

Plaintiffs' Opposition, despite the fact that it is the single "most important consideration in a first-filed rule analysis." *Worthington v. Bayer Healthcare, LLC*, 2012 WL 1079716, at *4 (D.N.J. Mar. 30, 2012).

As "the part[ies] opposing application of the [first-filed] rule," the burden was on Plaintiffs to show why this case falls within one of the rule's "rare and extraordinary" exceptions, such as "inequitable conduct, bad faith, or forum shopping." *Se. Power Grp., Inc. v. SAP Am.*, 2020 WL 4805352, at *3 (E.D. Pa. Aug. 18, 2020). They have failed to do so here. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 220 (3d Cir. 2016) (in "vast majority of cases," courts "stay or transfer a second-filed suit").

***Issues:*** Plaintiffs allege the exact same statutory violation of 23 U.S.C. § 301 that is alleged in the SDNY actions. Mot. at 14-16; Opp. at 9. That alone is sufficient for transfer. Given that the first-filed rule applies when plaintiffs allege violations of *different* statutes, it obviously applies where the cases turn on the same statute. *See, e.g.*, *Maximum Hum. Performance v. Dymatize Enters., Inc.*, 2009 WL 2778104, at *3 (D.N.J. Aug. 27, 2009); *Worthington*, 2012 WL 1079716, at *5-6.

Although Plaintiffs contend that their *arguments* are somehow very different from those raised in the SDNY actions, Opp. at 6-11, that does not work either. The test is whether there are distinct "issues," not theories. A plaintiff cannot evade the first-filed rule simply by raising new arguments about the same statute. *See, e.g.*,

*E.E.O.C. v. Univ. of Penn.*, 850 F.2d 969, 972-74 (3d Cir. 1988) (one case presented constitutional and statutory challenges to EEOC policy while other case was subpoena enforcement proceeding); *Filler v. Lernout*, 2002 WL 227079, at *2 (D. Del. Feb. 8, 2002) (cases "involve[d] the same set of facts, although not necessarily the same claims"); Mot. at 15-16.

Moreover, Plaintiffs do make the same argument that the plaintiffs made in *Blumencranz* here. Opp. at 7 (conceding same).[2] While Plaintiffs now try to distance themselves from their own allegations, Opp. at 7-8, 9 n.4, the words describing their third reason for invalidation of the Program in their Complaint speak for themselves. *See* Compl. ¶¶ 1-5. Plaintiffs have clearly engaged in blatant forum shopping to avoid an adverse decision directly on point. Indeed, "[t]he most uniform rejection of law-shopping seems to occur when a party attempts to ignore earlier adverse decisions by attempting to have the same claims aired in different courts." Kimberly J. Norwood, *Shopping for a Venue*, 50 U. Miami L. Rev. 267, 289 (1996).

Like Plaintiffs here, Secretary Duffy argues in *Duffy* that the "tolling program was and is *illegal from its inception*." Opp. at 6 (emphasis in original); *see Duffy*, 784 F. Supp. 3d at 651. And like Plaintiffs here, Secretary Duffy argues that the geographic area covered by the Program (or the CBD) is not authorized by the VPPP

[2] Plaintiffs claim that the *Blumencranz* complaint does not cite to the VPPP, *see* Opp. at 9 n. 5, but that is wrong, *see, e.g.*, *Blumencranz*, ECF 21 ¶¶ 4, 5, 6, 59, 60.

statute. *Compare* Opp. at 2 (Program "does not meet the parameters" set out in statute) *with Duffy*, 784 F. Supp. 3d at 651 (arguing Program impermissibly used "cordon pricing").[3] Judge Liman in *Duffy* has already considered the text of the VPPP statute, as well as its regulatory and statutory history, in a 109-page opinion. As a result, he is extremely "familiar" with the relevant "issues." Opp. at 26 n.21.

***Parties:*** The parties in *Dunne* and *Blumencranz* are substantially identical. Both cases are against the same defendants. The proposed plaintiff class in *Dunne* actually includes the plaintiff in *Blumencranz*. *See, e.g.*, *Catanese v. Unilever*, 774 F. Supp. 2d 684, 688 (D.N.J. 20211) ("[I]n a class action, the classes, and not the class representatives, are compared").[4] Although Plaintiffs insist there must be complete "identity of parties," Opp. at 12, that is not true when the case is brought as a class action. *See, e.g.*, *MacLean v. Wipro*, 2020 WL 7090746, at *8 (D.N.J. Dec. 4, 2020); *Abushalieh v. Am. Eagle Exp.*, 716 F. Supp. 2d 361, 366 (D.N.J. 2010); *Worthington*, 2012 WL 1079716, at *7 (parties sufficiently similar if a "plaintiff might be a member of a class certified in the [other] actions, or *vice versa*, if class

[3] A cordon pricing program, sometimes called zone-based pricing, is one "in which every inbound route to the congestion zone would be tolled." *Duffy*, 784 F. Supp. 3d at 676. *Dunne* and *Duffy* both ask the same question: whether the VPPP statute authorizes tolling on the streets of New York City.

[4] In our moving brief, we inadvertently cited a letter filed in *Catanese*, which looks like a case on the Westlaw database. Mot. at 14 n.7, 15. We apologize for the error. The proposition we relied on, however, is stated elsewhere in numerous cases. *See, e.g.*, *Mazzei v. Heartland Payment Sys., LLC*, 2023 WL 6121318, at *5 (D.N.J. Sept. 19, 2023) ("absolute identity" not required).

certification is granted"). A plaintiff "cannot avoid application of the first-filed rule simply by asserting that it was not initially a party to the earlier filed action." *Advanta Corp. v. Visa U.S.A.*, 1997 WL 88906, at *3 (E.D. Pa. Feb. 19, 1997).

Not surprisingly, Plaintiffs are forced to rely on cases that are not class actions. *See Kedia v. Jamal*, 2007 WL 1239202, at *3 (D.N.J. Apr. 25, 2007) (individual claim and different defendant); *Just Enter., Inc. v. O'Malley & Langan*, 560 F. Supp. 2d 345, 348 (M.D. Pa. May 30, 2008) (individual claim against different defendants involving "unique" facts).[5] And while Plaintiffs attempt to distinguish our cases, Opp. at 13 n.10, those cases all involve examples of courts applying the first-filed rule even when there was no perfect identity between the parties. *See Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 189 F.2d 31, 32 (3d Cir. 1951) (plaintiff in second action was not a party in the first-filed action); *Triangle Conduit & Cable Co. v. Nat'l Elec. Prods. Co.*, 125 F.2d 1008, 1009 (3d Cir. 1942) (additional named defendant in the second action); *Worthington*, 2012 WL 1079716, at *7 (named plaintiffs were different); *Ivy–Dry, Inc. v. Zanfel Lab'y, Inc.*, 2009 WL 1851028, at *5 (D.N.J. June 24, 2009) (defendant in second action was the plaintiff in the first filed); *Maximum Hum. Performance*, 2009 WL 2778104, at *4 (same).

[5] Although some of the parties to the SDNY actions "are governmental entities and government officials," like the United States Department of Transportation, Plaintiffs do not explain why that should matter here. Opp. at 13-14 & n.9; *see Abushalieh*, 716 F. Supp. 2d at 366 (relevant inquiry here is whether a "set of named plaintiffs intends to represent the other set").

## II. TRANSFER IS APPROPRIATE PURSUANT TO 28 U.S.C. § 1404

### A. Private Interest Factors

***Plaintiffs' preference of forum:*** The weight afforded to a plaintiff's choice of forum is considerably weaker when the case is a class action. Mot. at 22-23 (collecting cases). In arguing otherwise, Plaintiffs rely almost entirely (again) on cases that are not class actions. *See MaxLite v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 376 (D.N.J. 2016) (individual plaintiff); *Wm. H. McGee & Co., Inc. v. United Arab Co.*, 6 F. Supp. 2d 283, 286 (D.N.J. 1997) (same).

There is no reason why this case—which challenges a New York program on behalf of a putative nationwide class made up primarily of New Yorkers—should proceed in New Jersey. *Karimi v. Deutsche Bank Aktiengesellschaft*, 2022 WL 1001566, at *5 (D.N.J. Mar. 31, 2022) (where "the center of gravity for this action" is elsewhere, plaintiffs' choice is afforded "little weight"). That is particularly true here, where one of the three named Plaintiffs actually lives in Virginia. Compl. ¶ 13; *see In re 3M*, 2020 WL 13924735, at *2 (3d Cir. Nov. 18, 2020).

In an effort to refute the obvious fact that the vast majority of class members would be New Yorkers and others who are not New Jersey residents, *see* Mot. at 22 n.9, Plaintiffs cite data in the EA to compare all tolls from New Jersey to all tolls from a single borough in New York City (Manhattan). But it is misleading for Plaintiffs to look only at Manhattan, *see* Opp. at 21, when the SDNY also includes

the Bronx, Westchester, Rockland, Putnam, Orange, Dutchess, and Sullivan counties. And *New Yorkers* account for approximately 70% of toll revenue.[6] ECF 39-2 at 65. Plaintiffs offer no good reason to ignore the rest of New York.

***Defendants' preference of forum:*** Plaintiffs try to undermine the significance of Defendants' choice of forum by arguing that it should matter less than their own. Opp. at 17. But the supposed "rule" they cite is supported by only two cases—neither of which involved, as here, the exact same defendants who were already litigating related claims in the transferee court. *See Danka Funding v. Page*, 21 F. Supp. 2d 465 (D.N.J. 1998); *In re CityMD Data*, 2025 WL 2505655 (D.N.J. Sept. 2, 2025). In fact, a defendant's preference can be "sufficient to warrant a transfer" where there is related litigation already proceeding in another forum. *Palagano v. NVIDIA*, 2015 WL 5025469, at *5 (E.D. Pa. Aug. 25, 2015) (collecting cases).

Plaintiffs also claim that Defendants' forum preference should be "accorded even less weight" because of the two New Jersey NEPA cases pending before Your Honor. But those two cases relate solely to NEPA and environmental issues in New Jersey, not the VPPP.

---

[6] Indeed, Plaintiffs' forum shopping is all the more apparent from their strategic decision to only include named Plaintiffs residing outside of New York. In analogous contexts, including under the Private Securities Litigation Reform Act, courts consider whether the "lead plaintiff" "adequately represent[s] the interests of the class members." *Wilson v. Aurora Cannabis, Inc.*, 2020 WL 13876739, at *2 (D.N.J. July 23, 2020) (citation omitted).

***Where the claims arose:*** Plaintiffs' claims clearly "arose" in New York. Opp. at 18. The Program is operated by TBTA, a New York public authority, in Manhattan, and Plaintiffs concede they were only charged tolls when entering the Manhattan CBD. Compl. ¶¶ 42-48; *Mulgrew v. Dep't of Transp.*, 717 F. Supp. 3d 281, 287 (E.D.N.Y. 2024) (granting motion to transfer congestion-pricing challenge because "Plaintiffs' entire challenge is rooted in claims arising in the Southern District of New York"); *Kane v. Ollie's Bargain Outlet Holdings, Inc.*, 2018 WL 6168085, at *4 (D.N.J. Nov. 26, 2018) (in nationwide class action, "center of gravity" is "where company-wide policies and practices were instituted").

In response, Plaintiffs argue that the Program "effectively" borders New Jersey. Opp. at 18. But the same could be said of anything on the West side of Manhattan, including Zabar's. Plaintiffs' objection that the Program causes "significantly greater harm" to New Jersey drivers makes no sense. *Id.* at 16 n.13. In compliance with the constitutional right to travel, the Program charges the same toll to drivers regardless of their state of residence. *Chan v. Dep't of Transp.*, 782 F. Supp. 3d 39, 69, 70 (S.D.N.Y. 2025).

All that Plaintiffs are left with is a series of tangential connections to New Jersey that have no bearing on their claims. That this Court is presiding over the two New Jersey NEPA cases, which are unrelated to the VPPP statute or the issues in the SDNY actions, does not alter the analysis. Opp. at 18.

Nor is it relevant that one of the many Program contractors (TransCore) happens to have a satellite office in New Jersey. *See, e.g.*, *Karimi*, 2022 WL 1001566, at *5-6 (plaintiff could not rely on defendant's alleged "New Jersey office location(s)" absent nexus with misstatements giving rise to plaintiffs' fraud claims). Plaintiffs do not offer any support for their implausible claim that Program tolls are "collected" by TransCore from New Jersey. *Contra* Opp. at 19. In fact, the tolls are collected by E-ZPass New York, an entity that operates under the auspices of multiple tolling agencies, including TBTA. *See* E-ZPass New York, *Temporary Travel Account – Terms & Conditions*, https://www.e-zpassny.com/tbm/tta-terms-and-conditions. And while Plaintiffs purport to use a TransCore press release to establish that the Program is "operated and maintained" from New Jersey, the press release they cite not only says no such thing, but was issued from TransCore's headquarters in Nashville. Opp. at 19 (citing ECF 39-2 at 6).

The core of Plaintiffs' case is that the decision to implement the Program was unlawful under the VPPP statute. That decision, and "all votes and contested actions raised against the MTA and TBTA … occurred in New York County." *Town of Hempstead v. Hochul*, Index No. 450653/2025 (N.Y. Sup. Ct. Feb. 10, 2025), NYSCEF No. 75 (transferring congestion pricing action to New York County). For this reason, even the cases Plaintiffs cite support transfer here to the SDNY. *See In re CityMD*, 2025 WL 2505655, at *7 (center of gravity where the defendant was

headquartered and challenged practice "originated"); *Yocham v. Novartis Pharms.*, 565 F. Supp. 2d 554, 559 (D.N.J. 2008) (where product was developed).

***Convenience:*** Plaintiffs do not contest the fact that the MTA Defendants are located in the SDNY, as are the witnesses and records. *See* Opp. at 21-22. Although these factors do not weigh strongly here given the proximity of this District to the SDNY, they clearly point in the direction of transfer. *See, e.g.*, *Cancer Genetics, Inc. v. Kreatech Biotech.*, 2007 WL 4365328, at *5 (D.N.J. Dec. 11, 2007) (transferring to the SDNY, noting "counsel for [plaintiff] is predominantly located in New York"). The fact that lead counsel for both sides have litigated many cases in the SDNY and maintain offices in Manhattan only reinforces that conclusion. *See* Cyrulnik Fattaruso LLP, https://cf-llp.com/.[7]

**B. Public Interest Factors**

Plaintiffs' arguments against transfer under the public interest factors also lack merit. Mot. at 29-35.

***Practical Considerations*:** Plaintiffs cannot seriously dispute that Judge Liman is deeply familiar with the facts and the law in this case. Opp. at 25-26. Judge Liman has reviewed extensive briefing on the scope of the VPPP, the VPPP Agreement, and Secretary Duffy's authority to authorize the Program under the

[7] *See, e.g.*, *Brachovel v. S. Bay Energy*, 23 Civ. 184 (S.D.N.Y.) (Plaintiffs' counsel); *Caroll v. Trump*, 20 Civ. 7311 (S.D.N.Y.) (Defendants' counsel).

VPPP, and has issued a 109-page opinion addressing each of these topics. If transfer is denied, this Court will be asked to decide the same issues, thereby raising the prospect of "inconsistent or duplicative orders." *Patton Boggs v. Chevron Corp.*, 2012 WL 6568526, at *2-3 (D.N.J. Dec. 14, 2012). And although there is no private right of action to enforce Section 301, the claims here as well as the claims in the SDNY actions are predicated on the same legal theories under the VPPP statute repackaged here as different causes of action. Mot. at 14 n.7. Unlike in *Boston Science v. Johnson & Johnson*, 532 F. Supp. 2d 648 (D. Del. 2008), the risk of inconsistent rulings is far from being "entirely speculative," *id.* at 656.

***Administrative Issues*****:** Plaintiffs concede that courts in this District face a far greater caseload than the SDNY. *See* Mot. at 32-33. While congestion alone is not enough to warrant transfer, Opp. at 26, the "caseloads of [] two districts *also supports* a transfer of venue" where, as here, other factors support transfer. *Kalawa v. United States*, 2020 WL 3603205, *7 (D.N.J. July 2, 2020) (emphasis added); *see, e.g.*, *Booth v. Citizens Bank*, 2023 WL 3916275, at *6 (D.N.J. June 9, 2023) ("great congestion in this Court" favored transfer). Neither of the cases cited by Plaintiffs suggests otherwise. *See In re CityMD*, 2025 WL 2505655, at *4 (recognizing congestion is relevant); *Yocham*, 565 F. Supp. 2d at 560 (same).

***Local Interest*****:** Plaintiffs go to great lengths to distinguish the "central issue" in this case, which is the validity "under a *federal* statute" (the VPPP) of the Program

mandated by a *New York* statute that is exclusively operated *in New York*. *Cf.* Opp. at 24 (emphasis added). To reiterate, all the events giving rise to Plaintiffs' claims—the implementation and operation of the Program, and the tolls charged upon entering the CBD—took place in the SDNY. As noted above, neither the fact that the CBD "borders" New Jersey nor any actions taken by TransCore, a third-party contractor, makes any difference. *See supra* at 10-11.

Likewise, Plaintiffs are wrong that the tolls will inflict "more harm" on New Jersey residents. *See supra* at 9-10. And the fact that two of the named Plaintiffs reside in New Jersey is outweighed by the far more compelling considerations of conserving judicial resources, preventing conflicting judgments, and discouraging forum shopping. *See Patton Boggs*, 2012 WL 6568526, at *2-3.

## III. TRANSFER IS ALSO REQUIRED BY SECTION 1406

In any event, transfer is required because there was no legitimate basis for venue in this District in the first place. Plaintiffs fail to cite *a single* "event[] or omission[]" giving rise to their claims that "occurred" in New Jersey, much less show that a "substantial part of the events" took place here. 28 U.S.C. § 1391(b)(2); *Bockman v. First Corp.*, 459 F. App'x 157, 161 (3d Cir. 2012). It is silly for Plaintiffs to argue that their claims somehow arose "along the New Jersey border." Opp. at 28. The cases Plaintiffs cite, *see* Opp. at 27, involve situations where the defendant failed either to contest venue or to provide sufficient evidence to rebut allegations

concerning residence. And the fact that the MTA Defendants have litigated the New Jersey NEPA cases in this District is beside the point. *Contra id.* at 29. "[T]he test … is not the defendant's contacts with a particular district, but rather the location of those events or omissions giving rise to the claim." *Bockman*, 459 F. App'x at 161.

As for Plaintiffs' attempt to connect this lawsuit to TransCore, Plaintiffs' own exhibits establish that less than 10% of the employees of the Tennessee-based company work at the satellite office in New Jersey, ECF 39-2 at 10, and they fail to establish that these *de minimis* connections have any bearing on the claims in this case. *See supra* at 11; *Bockman*, 459 F. App'x at 161 ("[c]orporations' general contacts with Pennsylvania" do not prove that is "where the acts or omissions giving rise to the Complaint occurred").[8]

While Plaintiffs are correct that venue can be proper in more than one district, Opp. at 28, that is true only when more than one district encompasses the location where substantial events related to the case have occurred. *Bockman*, 459 F. App'x at 161. Plaintiffs' choice of forum on its own is not enough to establish venue under Section 1406. *See de Rojas v. Trans States*, 204 F.R.D. 265, 269 n.4 (D.N.J. 2001).

[8] Plaintiffs' cases are inapposite since they all involve claim-causing conduct within the forum district. *See Kravitz v. Niezgoda*, 2012 WL 4321985, at *5 (E.D. Pa. Sept. 21, 2012) (defendant published statements, and caused "special damage," in forum); *State Farm Mut. v. Tz'doko V'CHESED of Klausenberg*, 543 F. Supp. 2d 424, 434 (E.D. Pa. 2008) (forum was "the locus of all of the underlying acts in the fraud scheme"); *Superior Precast v. Safeco Ins. Co.*, 71 F. Supp. 2d 438, 444 (E.D. Pa. 1999) ("substantial part of the performance of a contract" occurred in forum).

## CONCLUSION

For all of these reasons, the MTA Defendants' motion to transfer venue to the Southern District of New York should be granted.

Dated: February 11, 2026

Respectfully submitted,

/s/
Daniel Chorost
Mark A. Chertok*
Elizabeth Knauer*
SIVE, PAGET & RIESEL, P.C.
560 Lexington Avenue, 15th Floor
New York, NY 10022
(212) 421-2150
dchorost@sprlaw.com
mchertok@sprlaw.com
eknauer@sprlaw.com

/s/
Roberta A. Kaplan*
D. Brandon Trice*
Maximilian T. Crema*
KAPLAN MARTIN LLP
1133 Avenue of the Americas
Suite 1500
New York, NY 10036
(212) 316-9500
rkaplan@kaplanmartin.com
btrice@kaplanmartin.com
mcrema@kaplanmartin.com

*Counsel for Defendants the Metropolitan Transportation Authority and Triborough Bridge and Tunnel Authority*

**Admitted pro hac vice*